## Phillips *v.* Kleinman, Appellant.

*Trusts and trustees—Resulting trust—Husband and wife—Title in husband—Agreement to reconvey—Fraud—Evidence—Equity.*

On a bill in equity by the trustee of a bankrupt husband against the wife of the bankrupt to set aside a deed of conveyance alleged to have been in fraud of the husband's creditors, the court is bound to find that the husband held the title as trustee for his wife and had

properly executed the trust by the conveyance to her, where it appears that the land in question was purchased for $4,000 from the parents of the husband; that $2,000 thereof was paid by the wife's father, who took a mortgage for that amount and the balance secured by a mortgage to the husband's mother; that the title was taken in the husband's name temporarily with an agreement by him to convey it to his wife; that subsequently the wife's father voluntarily satisfied his mortgage for $2,000 and upon his death left his daughter $2,000 which the latter gave to her husband, stating that it was the balance of the $4,000 purchase money and that prior to this the husband had paid off the mortgage to his mother. In such a case it is immaterial that the husband was insolvent when he executed the trust by the conveyance to his wife.

Argued May 1, 1911. Appeals, Nos. 13 and 16, Oct. Term, 1911, by Emma Kleinman and Edward C. Kleinman, separately, from decree of C. P. No. 4, Allegheny County, Third Term, 1909, No. 851, setting aside conveyance of real estate in case of Ferd H. Phillips, Trustee of Estate of Edward Clarence Kleinman, bankrupt, v. Emma Kleinman, Edward Clarence Kleinman and Thomas F. Garrahan. Before FELL, C. J., BROWN, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Bill in equity to have a conveyance of real estate set aside as being in fraud of creditors. Before SWEARINGEN, P. J.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in certain findings of fact, in refusing certain points, and the decree of the court.

*W. A. Stone,* of *Stone and Stone,* with him *Wilson & Evans,* for appellant.—The facts found by the court, or established by the uncontradicted evidence of the case establish a resulting trust in favor of Emma Kleinman: Rupp's App., 100 Pa. 531; Bigley v. Jones, 114 Pa. 510; Olinger v. Shultz, 183 Pa. 469; Feig v. Meyers, 102 Pa. 10; Lynch v. Cox, 23 Pa. 265; Galbraith v. Galbraith, 190 Pa. 225; Casciola v. Donatelli, 218 Pa. 624.

*Frederic Walsingham Miller,* for appellee.—There never was a resulting trust, as the title to the land in dispute was not put in Kleinman's name originally in breach of any agreement, duty or trust, to put in Mrs. Kleinman's name, but on the contrary in pursuance of an express agreement that the title should be taken in his own name: Byers v. Ferner, 216 Pa. 233; Crawford v. Thompson, 142 Pa. 551; Cornman's Est., 197 Pa. 125; Heiges v. Pifer, 224 Pa. 628.

Emma Kleinman is barred by laches and estoppel and by the statute of limitation from setting up the trust: Hinman v. Silcox, 91 Md. 576 (46 Atl. Repr. 1017); Humes v. Scruggs, 94 U. S. 22; Kreider's Est., 212 Pa. 587; Olinger v. Shultz, 183 Pa. 469; Miller v. Baker, 160 Pa. 172.

OPINION BY MR. JUSTICE BROWN, July 6, 1911:

On March 29, 1906, Edward C. Kleinman conveyed to his wife, Emma Kleinman, three and one-half acres of land situated on Neville Island, Allegheny county. Two years and nine months afterwards he filed his petition in the United States court to be adjudged a voluntary bankrupt, and, in the following July, his trustee in bankruptcy filed a bill in the court below to set aside his conveyance to his wife, on the ground that it was made for the purpose of hindering, delaying and defrauding creditors, and was, therefore, void under the statute of 13 Elizabeth. The main defense of the wife was that the beneficial interest in the land conveyed to her had never been in her husband, but was in her by way of a resulting trust. She and her husband have appealed from the decree that there had not been a resulting trust for her and that the conveyance was in fraud of his creditors.

Certain facts were found by the learned chancellor below which go to support the wife's claim that the husband had held title as trustee for her, and we shall first notice them. Edward C. Kleinman was married on September 6, 1881, to Emma Pluchel, a daughter of John Pluchel, who at that time resided in the state of Ohio. In the fall

of 1887 he came to Allegheny county to assist in the purchase of a tract of land from Hubert and Eliece. Kleinman, the parents of Edward. They agreed to sell ten acres for the consideration of $4,000. Pluchel had with him $2,000 in gold, and, at an interview at which he, Hubert Kleinman, his wife, Edward C. Kleinman and his wife were present, a dispute arose as to how the title to the property should be made. Kleinman, the father, refused to sell unless the deed was made to his son. Pluchel and his daughter insisted that the deed should be made to her, and it was finally agreed that the title should be taken in the name of Edward C. Kleinman, and no definite agreement was made that the title should ever be placed in Emma Kleinman or that the beneficial interest in the land was hers at the inception of the title. A deed from Hubert Kleinman and his wife was executed and delivered on September 5, 1887, to Edward C. Kleinman, upon the payment of $2,000 in cash by John Pluchel and the execution of a mortgage by the grantee to his mother for $2,000, the balance of the purchase money. It did not appear how much interest, if any, Pluchel ever received upon his mortgage. On December 31, 1894, he voluntarily executed a paper acknowledging satisfaction of it, which he mailed to his daughter, Emma Kleinman, and she handed it over to her husband, who had it duly recorded in the recorder's office of the county. Pluchel died November 11, 1901, having by his will made the following provision for his daughter: "Fourth: To my daughter, Emma, intermarried with Edward Kleinman, in addition to the two thousand dollars I already advanced to her, I give, devise and bequeath to her and her lineal heirs the sum of two thousand dollars payable upon the death of my said wife, and she is to receive no more from my estate." On April 7, 1904, William Pluchel, executor of the will of John Pluchel, paid Emma Kleinman the $2,000 given her by the foregoing bequest and two days later she deposited it to her credit in a trust company. On the twenty-seventh of the · next month she paid this sum to her husband by her check

of that date.  The mortgage which Edward C. Kleinman gave to his mother he paid prior to the time he received the $2,000 from his wife.  Shortly after the purchase of the land Emma Kleinman asked her husband to convey it to her, in accordance, as she alleged, with his agreement to do so, and she thereafter made the same request very frequently, but he as often did not do so.  All of the foregoing facts were found by the learned chancellor below upon the testimony of the appellants, whom he must have regarded as credible witnesses.  He failed, however, to find other most important facts supported by their uncontradicted testimony.  As they were credible witnesses, with circumstances tending to corroborate their testimony, there ought to have been the following further findings: Some time prior to September, 1887, during a visit of Emma Kleinman to her father in Ohio, he said to her: "If you can find a place down there I'll help you to buy it—I'll buy it for you.  I think it would be a good investment for you."  Subsequently E. C. Kleinman saw his father and mother and they agreed to sell the ten acres of land for $4,000.  John Pluchel then came on to Neville Island and paid the $2,000 on account of the purchase money.  When the father of Edward said he would not sell unless the title was put in his son's name, Pluchel replied that, as he was going to pay for the property, he did not propose to have the title put in the name of his son-in-law and wanted it in the name of his daughter.  The daughter said to her husband, "now, my father is bringing the money and is going to pay for this property, why don't you get your father to consent to have that in my name?"  To which he replied: "Now, here is a good chance for us to get some property, let's try to get them to fix it up so as to put the title in me temporarily, and I will transfer it back to you later."  When the title was put in his son's name, Pluchel insisted upon taking a mortgage for $2,000 to protect his daughter's interest.  When he sent her the power of attorney to satisfy the mortgage, he wrote that she had better

satisfy it, as, if anything would happen to him, she might have to pay it, with interest. At the time the title was made to Edward C. Kleinman he agreed with her that she should get the property back at any time she demanded it, that he would deed it to her at any time, and when she gave him the $2,000 which she received under her father's will, she said to him, "Here is the balance of the $4,000."

It is clear to us that the court below should have found that the husband held the deed in trust for his wife. It did not find that there had been no agreement that the title was in her, or that the beneficial interest in the land was hers at the inception of the title. The finding is merely that there was no such definite agreement. In the face of the testimony, the finding ought to have been that there was such a definite agreement, and we now so find. The wife paid with her own moneys, obtained from her father and her father's estate, the entire amount of the purchase money. Her father first paid $2,000 directly for her, and subsequently she handed over to her husband the $2,000 which she received from her father's estate, saying to him at the time she did so, "Here is the balance of the $4,000." In answer to the contention that, as the testimony of the husband and wife was uncontradicted, it ought to be taken as true, the first reason given by the court below for not agreeing to this was that, while it was not contradicted by any witnesses, it was contradicted by the facts in the case, because it was in conflict with the deed and bonds and mortgages which were executed and delivered at the time the purchase was consummated. It is well contended by the learned counsel for appellants that there never was a resulting trust about which almost as much might not be said. Such a trust arises only when the grantee named in the deed is not the real owner of the property. Other findings of fact—with which we need not burden this opinion—were regarded by the court below as at variance with the claim that the husband had held the land in trust for his wife. What he did with

other portions of the ten acres, with her consent, was entirely consistent with her claim that he held title for her, and it is sufficient to say that no fact or circumstance found by the court below was inconsistent with that claim. As we are of opinion that the facts found, and which ought to have been found on the uncontradicted testimony in the case, clearly established a resulting trust, it is immaterial to consider the question of the husband's insolvency at the time he executed the trust by making the conveyance to his wife. If he was trustee, he could execute the trust, whether solvent or insolvent.

The decree of the court below is reversed and the bill dismissed with costs.

