Lincoln *v.* Christian, Appellant.

Argued April 25, 1928.

Before PORTER, P. J.,
HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and
CUNNINGHAM, JJ.

*Robert L. Vann,* and with him *Wilbur C. Douglass,* for appellant.

*Charles G. Notari,* and with him *Rody P. Marshall,* for appellee.

OPINION BY CUNNINGHAM, J., July 12, 1926:

For the second time the plaintiff has recovered a verdict against the defendant for money which she alleges he borrowed from her in an individual capacity and upon his own credit, although the written evidence of indebtedness held by plaintiff and produced at the trial was the judgment note of the Booker T. Washington Hospital Association of Western Pennsylvania, of which both were members and officers. The note was in the sum of $1,000, payable to the order of plaintiff one day after its date, May 11, 1922. The case necessarily turned upon certain issues of fact which were clearly and impartially submitted to the jury in a charge concerning which no complaint is made and in the course of which the learned trial judge affirmed all of defendant's points except his request for binding instructions. The present appeal is from the judgment entered upon the verdict after defendant's motions for a new trial and for judgment n. o. v. had been denied. The action was commenced in 1923 and the first verdict rendered in May, 1925. The court in banc, being of opinion "that while the verdict could be sustained by the evidence of the plaintiff, herself, the weight of the evidence was with the defendant," granted a new trial. The question of the preponderance of the evidence at the second trial, in so far as it was within the control of the court below, was disposed of adversely to defendant by the order refusing a new trial and that order has not been assigned for error.

The assignments are four in number. The first and third are based upon alleged erroneous rulings upon

evidence and the second and fourth upon the denial of defendant's motion for judgment non obstante and the entering of judgment upon the verdict. It is impossible to reconcile the testimony of the plaintiff and her corroborating witnesses with the testimony of the defendant, which is also corroborated to some extent, and it is extremely difficult to avoid the conclusion that one or the other of the parties has committed willful and corrupt perjury in this case. As stated, both plaintiff and defendant were members and officers of an association formed under the name of the Booker T. Washington Hospital Association of Western Pennsylvania for the purpose of establishing a hospital for the negro race in the city of Pittsburgh. The association had an option to purchase the existing Pittsburgh Italian Hospital for $21,000 and was obliged to pay $5,000 of this amount by a specified date. A campaign, of which the defendant was the manager, was conducted for the purpose of raising funds. The project failed and the $5,000 paid for the option was forfeited. There was evidence that plaintiff became a member of the hospital association in January, 1922, and that defendant, a practicing physician, was one of the promoters of the proposition. It was admitted at the trial that plaintiff had on deposit, or at least under her control, the sum of $1,000 in the City Deposit Bank and that she withdrew this money and placed it in the hands of the defendant during the early part of 1922. The controversy was upon the question whether this money was loaned by her to the hospital association, to assist it in making the $5,000 payment, or to the defendant individually. Plaintiff testified positively that on March 22, 1922, she loaned the defendant at his request the sum of $500, for which he gave her his judgment note of that date, payable in ninety days; that on April 11, 1922, she loaned him an additional sum of $500, surrendered the note of March 22nd, and took from him his judg-

ment note for $1,000, dated that day and payable in ninety days; that on June 24, 1922, the defendant requested her to bring the note for $1,000 to his office; that up to that time she had been paid $105 on account of the note—which payments had been endorsed on the back thereof—and she thought the defendant was about to make another payment. Her testimony with respect to the occurrences at defendant's office reads: "Q. When you handed him the note, did he pay you any money, or make any endorsement on the back? A. No, sir. Q. What did he do? A. He didn't pay me any money, he tore the note up, and gave me another note [the note of the association, dated May 11, 1922]. ...... Q. What did you say when you received it and looked at it? A. He made the statement that his personal note was no good, that everything he had belonged to his wife, and therefore that note was no good; so to insure me my money he gave me that note. Q. Did you accept it? A. I told him I didn't loan the money to the association— ...... Q. What did you say after you looked at the note? A. I told him the association didn't owe me anything, that it was his personal debt. Q. Why did you keep the note? A. It was the only thing I had to show that I never had the money. ........ Q. That you ever had it to give? A. Yes, sir." The defendant unequivocally denied each of these statements.

With regard to the payments aggregating $105, plaintiff testified that some of them had been paid in cash and that she had been given checks of the hospital association for others. The note of the association, referred to in the testimony we have quoted and admitted in evidence, has the corporate seal affixed and is signed by Nellie R. Graves, as president, and Laventia Wilson, as secretary. On the back are notations indicating that $60 had been paid on May 12th, $25 on May 24th, and $20 on June 20, 1922, and Mrs. Naomi Lightfoot, a stenographer and the secretary of

the hospital association, testified that the notations of the first and second payments were in the handwriting of plaintiff and of the third in that of the witness, and that all these payments were made to the plaintiff out of the funds of the association. Plaintiff denied, in rebuttal, that she made any of the notations. One of the obvious difficulties presented to the jury for solution was the presence of these notations on the back of the note showing payments in amounts which plaintiff admitted she had received but all made prior to June 24, 1922, the date upon which she testified the note first came into her possession; but this question was for the jury under all the conflicting testimony and was resolved by it in favor of the plaintiff. The most important question raised by the assignments is whether the court erred in denying defendant's motion for judgment in his favor n. o. v. The motion was based upon defendant's point for binding instructions and the inquiry is whether such instructions should have been given (Caldwell v. Continental Trust Co., 291 Pa. 35). Counsel for appellant seem to contend that the trial judge should have found that the overwhelming weight of the evidence was in favor of the defendant, and, upon this ground, directed a verdict in his favor. In their brief they say: ''It is very evident that the court erred in submitting to the jury a fact which did not exist, viz., whether the plaintiff loaned money to the appellant individually or whether she loaned her money to the corporation'' and then argue that the note in evidence clearly shows that she loaned the money to the hospital association. There were no documents requiring construction and the argument in behalf of defendant overlooks the established principles clearly restated by Mr. Justice WALL-ING in the recent case of Hardy v. Millers Mutual Fire Insurance Association, 293 Pa. 9, in this language: ''In issues turning on oral proof, a litigant's case, supported by more than a scintilla of evidence, must go

to the jury regardless of the strength of the opposing testimony. As stated by Mr. Justice KEPHART, speaking for the court, in Fuher v. Westmoreland Coal Co., 272 Pa. 14, 16: 'We have frequently said in cases where the apparent weight of the evidence on a disputed fact was overwhelming, still, if there was countervailing evidence of it upon which the jury might make a finding, all the evidence must be for their consideration. The jury had the undoubted right to weigh the evidence and pass on the credibility of the witnesses, where plaintiff's evidence, standing alone, would justify the inferences necessary to support his claim.' To like import see Hartig v. American Ice Co. et al., 290 Pa. 21; Thomas v. Penna. Railroad Co., 275 Pa. 579; McGlinn Distilling Co. v. Dervin, 260 Pa. 414. Being a question depending on the credibility of oral testimony, it was for the jury: Sorensen v. Quaker City P. Adv. Co., 284 Pa. 209. Furthermore, in support of the verdict, we must assume the truth of plaintiff's evidence and every inference fairly deducible therefrom: Grimes v. Penna. R. R. Co., 289 Pa. 320; Pfeffer et al. v. Johnstown, 287 Pa. 370; Murphy v. Phila. Rapid Transit Co., 285 Pa. 399.'' If plaintiff's evidence had been insufficient to sustain her claim, even if believed, defendant's request for binding instructions should have been granted; but from what we have heretofore stated about her testimony it is clear that, if accepted by the jury, it was sufficient to sustain a verdict in her favor. Under the evidence in this case binding instructions would not have been proper for either party. The preponderance of the evidence depended upon the credibility, and not the number, of the witnesses, and their credibility was for the jury. The second and fourth assignments must therefore be overruled.

The first assignment is based upon the alleged refusal of the learned trial judge to admit in evidence the minutes of a corporate meeting of the hospital

association, held April 21, 1922. The significance of these minutes is that they show the presence of the plaintiff at the meeting and that a motion was unanimously adopted "That the Booker T. Washington Hospital Association give Dr. W. H. Christian and Mrs. Abraham [Winona] Lincoln judgment notes to cover their individual loans to the association for furthering the purchase of the hospital and any other financial obligation assumed by them on behalf of the association." These minutes were offered in support of the theory of the defendant that the plaintiff had loaned her money to the association and had taken the association's obligation. As we understand the record these minutes were not finally excluded by the trial judge. They were first offered in connection with the testimony of Mrs. Nellie R. Graves, president of the association, who identified the minute book and testified that she presided at the meeting in question. It was objected that they did not show that the plaintiff had agreed to the action. The ruling of the court was "the objection is sustained until such time as the note is actually shown to have been delivered." Counsel for defendant then withdrew the offer "for the present." After the witness had testified that plaintiff "told in the association [at the meeting of April 21, 1922], she would loan the association $1,000 to help carry on the work" and had testified to the execution of the note, counsel again referred to these minutes. The record shows the following: "Mr. Vann [counsel for defendant]: I read from the minutes of April 21, 1922, page 17. (Minutes read.)" We conclude therefore that counsel for appellant are in error in asserting that this minute was excluded from the testimony. In any event the record fails to show any exception to any ruling of the court with respect to these minutes. The first assignment of error is accordingly dismissed.

The remaining error assigned is that the plaintiff, when called in rebuttal, was permitted to contradict

the minutes of the meeting of April 21, 1922, in so far as they showed her presence at that meeting. The question, ruling and answer, as shown by the record, were: "Look at it [page 17 of the minute book—minutes of April 21, 1922], and see if you were present, and whether the transactions referring to you were done in your presence? The Court: As far as you can go is whether she was there or not ...... A. No, sir." These minutes were only prima facie evidence of the transactions recorded therein; they were not conclusive and we think the testimony was admissible: Corpus Juris, Vol. 14, p. 376, Sec. 494; Loeffler's Estate, 277 Pa. 317, and cases there cited; Rose v. Independent Chevra Kadisho, 215 Pa. 69.

A careful reading of the entire record leaves a grave doubt as to whether the weight of the evidence at this trial was really with the plaintiff but the case was clearly for the jury and we are not persuaded that any reversible error was committed in its trial.

The judgment is affirmed.