Stewart *v.* Phila. R. T. Company, Appellant.

Argued October 2, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*H. Rook Goshorn,* and with him *Bernard J. O'Connell,* for appellant.

*Benjamin Goldman,* for appellee.

OPINION BY GAWTHROP, J., November 20, 1931:

Defendant appeals from a judgment in favor of plaintiff in an action for personal injuries and damages to his automobile. About half-past one o'clock on the morning of November 29, 1928, plaintiff was driving his Ford automobile westwardly on Market Street, in the City of Philadelphia, at a rate of speed between fifteen and eighteen miles an hour. At the point where the accident happened Market Street is sixty-two feet wide from curb to curb. In the center of the street are two car tracks, one eastbound and one westbound. On each side of the car tracks at a distance of two and a half feet there are pillars which are fifty feet apart, supporting an elevated railway. The photographs offered in evidence disclosed that there are arc lights hanging from each side of the elevated railway. The lights are one hundred feet apart. The roadway on each side of the car tracks is twenty-three and a half feet wide. There is a space of four feet nine inches between the eastbound and westbound tracks, known as the "dummy." The only lamps lighted on the front of the automobile were cowl lights. Plaintiff testified that when he reached a point just east of Thirty-first Street, which intersects Market Street at a right angle, and was driving with the left wheels of his car about six inches south of the south rail of the westbound track, he noticed "a flare" on the south rail of the eastbound track, and that men were "working there with lights" at a dis-

tance fifty feet in front of his car; that when he had passed Thirty-first Street about twenty or twenty-five feet the forward left wheel of his car struck an obstacle which caused him to lose control of his car, so that the car swerved to the eastbound tracks, when he noticed machines approaching from the west; that in order to avoid a collision he pulled his car to the right and before he could get back on a straight line westward it struck one of the pillars standing on the north side of the westbound track, causing the injuries and damages complained of. The car was damaged beyond repair. When he was asked whether he noticed what caused the car to swerve to the left, he said that it came in contact with the base of a standard located in the dummy between the tracks; that he "got a fleeting glimpse" of the standard as he struck it; that he did not notice any light on it or "any red lights at all;" that the standard was located about five or eight feet west of where the men were working. It is undisputed that at the time of the accident defendant's workmen were grinding a rail of the eastbound track with a machine. The machine carried an electric light which threw a light on the rails where the men were working. There would seem to be no doubt that this light caused "the flare" observed by plaintiff. It is also undisputed that defendant's men had placed several red lights in the street about the grinder, and that one of them was a red lantern which was hanging on the standard which was in the dummy. Plaintiff called as a witness one Hunter who was in defendant's employ and working with the grinder at the time of the accident. He testified that they then had five red lights around the machine at the time; that there was one on the east side, and one tied on the machine, one on the west side and one hanging on the standard which was in the dummy; that they had trouble with the light on the standard on the night of the accident; that it went out three times; and that he re-lit it

twice. He continued: "When I looked around I saw the light was out, and I had to take down my pole before I could take down my lamp; and before I took the pole down I heard the crash." "Q. You mean before you had a chance to get it lighted the accident happened? A. Sure, before I had a chance to take the pole down and get the lamp lit, I heard the crash of the car, had struck the staff. Q. All the other red lights were burning at the time this car hit the standard, were they? A. Yes, all the other four were burning. Q. They were all around your machine there? A. That's right." The only assignments of error are to the refusal of a point for binding instructions and the overruling of a motion for judgment non obstante veredicto.

Appellant contends that the evidence did not warrant a finding that it was negligent and that it shows that plaintiff was guilty of contributory negligence as a matter of law. In passing upon the question whether the court erred in submitting the case to the jury, the well established rule is that the testimony must be considered in the light most favorable to plaintiff, all conflicts therein must be resolved in his favor, and he is entitled to the benefit of every inference which may be drawn from it.

The negligence which plaintiff undertook to prove was that the light standard which defendant placed in the street was not made conspicuous by light and did not have a light thereon so as to give notice of its presence to persons using the street. The clear effect of the testimony of plaintiff's witness, Hunter, is that defendant was maintaining a lighted red lantern on the standard on the night of the accident; that this light was one of five red lights which surrounded the grinder and the men who were operating it; that four of the lights were burning when plaintiff struck the standard; and that the light on the standard which

stood in the dummy had become extinguished immediately before plaintiff struck the standard when there had not been sufficient time to re-light it. Defendant was performing its duty of giving notice of the obstruction upon the highway by maintaining several lights around it. The mere fact that the light on the standard went out is not sufficient to establish that defendant was negligent. The time which elapsed between the going out of this light and plaintiff's collision with the standard on which it hung was not sufficient to warrant the court in submitting to the jury the question whether or not defendant was negligent in permitting the light to remain out. To allow a finding of negligence under the circumstances established by the testimony resulted in testing defendant's conduct by too high a standard.

We conclude also that on the facts developed by the testimony of plaintiff and the plan and photographs which were offered without objection, plaintiff was guilty of such contributory negligence as bars his recovery. He saw defendant's men working on the eastbound track when he was fifty feet away from them and knew of the presence of an obstruction in that part of the street. Having this knowledge it was his duty to govern himself accordingly and to be vigilant to observe the character of the obstruction ahead. It is obvious that he did not do this, for he not only failed to see the red lights, but also drove his car with no lights but cowl lights, which, he said, would not render visible substantial objects more than six feet ahead. Furthermore he drove so close to the middle of the street that the left front wheel of his car struck the standard which was standing in the dummy when he had ample room to straddle the outside rail of the westbound track or in the driveway north of the pillars of the elevated railway. The standard with the unlighted lantern hanging from it

was an object of substantial size as clearly discernible as are many of the unlighted objects placed in city streets, such as traffic standards, and posts which support ropes marking traffic zones. It is not to be classed as an object too small to be readily visible in the dark, such as a rope (Clamper v. Phila., 279 Pa. 385), or the end of a pole (Eddy v. Reed, 86 Pa. Superior Ct. 578). Sections 802 and 804 of the Motor Vehicle Law of May 11, 1927, P. L. 886, which was in force at the time of this accident, required that plaintiff's car carry lighted front lamps which, under normal atmospheric conditions and on a level road, would produce a driving light sufficient to render clearly discernible all substantial objects one hundred sixty feet ahead. If plaintiff's car had such lamps they were not lighted. If it was too dark for him to see the object which he struck without the aid of proper driving lights, he was negligent in failing to use such lights, or in failing to drive so that he could stop within the range of the lights he was using. It is not contended in his behalf that he could have stopped within six feet. If it was sufficiently light to render clearly discernible a person on the highway at a distance of two hundred feet ahead (See Section 802 of the Act of 1927), he could have seen the object which he struck if he had been looking for objects which might intercept his passage and avoided the collision with the standard, and his failure to do both can be assigned only to his own carelessness. Under either hypothesis he was guilty of such contributory negligence as bars his recovery. The rule that one placed in sudden peril through the negligence of another will not be held liable for an error of judgment is inapplicable to the present case, first, because defendant was not negligent, and second, because plaintiff himself was at fault. This rule only applies when the injured person was placed in a dangerous situation

without negligence or his own fault: Montgomery v. Phila., 270 Pa. 346.

The judgment is reversed and is here entered for defendant non obstante veredicto.